## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
)
**KEMA BROWN and CHERYL BROWN,**            )
)
)
**Plaintiffs,**            )
)
**v.**            )
)            **Case No. 19-cv-12153-DJC**
)
**AERO GLOBAL LOGISTICS, LLC**            )
**and PAPA'S DODGE, INC.,**            )
)
)
**Defendants.**            )
)
)
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                     **May 18, 2020**

### I.        Introduction

Plaintiffs Kema Brown ("Brown") and Cheryl Brown (together, "Plaintiffs") have filed

this lawsuit against Defendants Aero Global Logistics, LLC ("Aero") and Papa's Dodge, Inc.

("Papa's Dodge") (together, "Defendants") alleging negligence against Papa's Dodge (Count I),

negligence against Aero (Count II) and loss of consortium against both Defendants (Count III)

arising out of injuries Brown sustained while delivering automobile parts to Papa's Dodge.  D. 7

at 4-8.  Papa's Dodge has  moved to dismiss for lack of personal jurisdiction. D. 8. For the reasons

stated below, the Court ALLOWS the motion.

### II.       Standard of Review

In ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P.

12(b)(2) without an evidentiary hearing, a district court must apply the prima facie standard of

review.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under the prima facie standard, Plaintiffs must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."  Id. (citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)).  The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings.  Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

## III.    Factual Background

The following facts are taken from Plaintiffs' complaint, D. 7 at 4-8, Papa's Dodge's memorandum in support of its motion to dismiss,  D. 9, and Plaintiffs' opposition to the motion to dismiss and accompanying memorandum and exhibits, D. 13; D. 13-1.  Plaintiffs are residents of the Commonwealth of Massachusetts.  D. 13 ¶ 1.  Papa's Dodge is a subsidiary of Fiat Chrysler Automobiles ("FCA") and is a Connecticut corporation.  D. 9 at 1.  It is a full-service automobile dealership with two locations in New Britain, Connecticut.  D. 13 ¶ 4; D. 9 at 1.  Brown was employed by a temporary agency, Premium Transportation Group, Inc., which assigned him to work as a truck driver for Aero, a corporation with a principal place of business in New Jersey that also has a location in Mansfield, Massachusetts.  D. 13 ¶¶ 2-3.

Papa's Dodge receives the majority of its parts from a parts depot center located in Mansfield, Massachusetts (the "Parts Depot").  D. 13 ¶ 8.  Aero trucks deliver the parts to Papa's Dodge approximately ten times per week.  Id.  Occasionally, a special order is delivered to Papa's

Dodge from another parts depot.  D. 13-1 at 1-2.  Papa's Dodge often returns parts to the Parts Depot via Aero trucks.  D. 13-1 at 2.  Papa's Dodge orders parts through an FCA software program.  D. 9 at 2; <u>see</u> D. 13 ¶¶ 10-12.  The software program allows Papa's Dodge to order select products from the FCA inventory that have been previously purchased from vendors by FCA.  D. 9 at 2; <u>see</u> D. 13 ¶ 12.  Papa's Dodge is enrolled in an Automatic Replenishment Order ("ARO") program that monitors inventory and automatically allows FCA to ensure that parts are pre-stocked at the Parts Depot for ordering by dealerships such as Papa's Dodge.  D. 13-1 at 1.  If an order arrives damaged or late, Papa's Dodge initially calls Aero to discuss the problem.  D. 13 ¶ 11.  If the call to Aero does not resolve the issue, Papa's Dodge will then call the Parts Depot.  D. 13 ¶ 11.  Papa's Dodge does not have any physical locations in Massachusetts and is not party to any contracts with any Massachusetts entity, including the Parts Depot.  D. 9 at 2; <u>see</u> D. 13-1 at 2.

This case arises out of an incident in which Brown was injured while delivering parts to a Papa's Dodge location in Connecticut on December 19, 2017.  D. 13 ¶¶ 5-6; D. 9 at 1.  Brown alleges that his injuries resulted from defective conditions on the loading dock at the Papa's Dodge location.  D. 7 at 5, ¶ 13; D. 13 ¶ 6.

## IV.    Procedural History

Plaintiffs instituted this action in Bristol Superior Court on September 13, 2019.  D. 7 at 4.  Defendants removed the case to this Court.  D. 1.  Defendant Papa's Dodge has now moved to dismiss.  D. 8.  The Court heard the parties on the pending motion and took this matter under advisement.  D. 15.

## V.    Discussion

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (internal quotation marks omitted).  Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts' long-arm statute and the due process clause of the Constitution.  Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). Here, "[b]ecause the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017).

If the statutory burden is met, constitutional due process requires that a non-resident defendant "ha[s] certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  This constitutional guarantee of due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co., 326 U.S. at 319).

### A.    Massachusetts Long-Arm Statute

Plaintiffs argue that the Court has personal jurisdiction over Defendants pursuant to section 3(a) of the Massachusetts long-arm statute, which provides for the exercise of personal jurisdiction over an individual in a cause of action "arising from the person's . . . transacting any business in

this commonwealth."  Mass. Gen. L. c. 223A, § 3(a); see D 13-1 at 3-4.  "For jurisdiction to exist under § 3(a), the facts must satisfy two requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant."  Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 317 (2018) (quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)).  The "transacting business" clause "is construed broadly, and courts look to whether the defendant attempted to participate in the Commonwealth's economic life."  QLS Logistic Servs., LLC v. JAWS Assocs., LLC, No. 17-cv-11891-ADB, 2018 WL 5816342, at *3 (D. Mass. Nov. 6, 2018) (quoting Geis v. Nestle Waters N. Am., Inc., 321 F. Supp. 3d 230, 238 (D. Mass. 2018)).  "The 'transacting business' test under section 3(a) is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party . . . with a view to determining whether 'the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable."  Roy v. FedEx Ground Package Sys., Inc., No. 17-cv-30116-KAR, 2018 WL 2324092, at *5 (D. Mass. May 22, 2018) (quoting Lyle Richards Int'l, Ltd., 132 F.3d at 112-13).

Here, Plaintiffs allege that Papa's Dodge's actions satisfy the "transacting business" requirement because Papa's Dodge "had direct contact with the parts depot by computer, telephone and through the trucking company on a daily basis."  D. 13-1 at 3.  Communication through Aero, in which Papa's Dodge instructed Aero employees regarding returns to the Parts Depot, are not direct communications between Papa's Dodge and the Parts Depot in Massachusetts, but are direct communications between Papa's Dodge and Aero.  Additionally, evidence submitted by Plaintiffs indicates that Papa's Dodge did not directly communicate with the Parts Depot when ordering parts through the FCA software program, DealerCONNECT.  See D. 13-3 at 1-4.  Although orders placed through the FCA were viewed by the Parts Depot, FCA and Aero, D. 13 ¶ 11, Papa's Dodge

did not order through a website or program managed by the Parts Depot.  There is no indication that Papa's Dodge had any control over which parts depot fulfilled their orders or intentionally sought to have orders filled by a parts depot in Massachusetts.  Thus, even if the delivery and return of parts between the Parts Depot and Papa's Dodge could be considered transacting business for the purposes of personal jurisdiction, Plaintiffs have not established that these transactions were purposeful on the part of Papa's Dodge, but rather that they resulted from Papa's Dodge's engagement with the FCA software that transmitted orders to FCA, Aero and the relevant parts depot.

The only direct communication that Plaintiffs allege occurred between Papa's Dodge and the Parts Depot were phone calls placed by Papa's Dodge employees to the Parts Depot to discuss problems with orders that Aero employees were unable to resolve.  D. 13 ¶ 11.  Plaintiffs assert that these calls were "routinely made."  D. 13-1 at 2.  These calls do not evidence Papa's Dodge's initiation or solicitation of business with Massachusetts, but rather were fortuitous in that they were necessitated by the Parts Depot's fulfillment of orders placed by Papa's Dodge through the FCA software program.  See  Lyle Richards Int'l, 132 F.3d at 112-113 (noting that "incidental contacts" were "insufficient to support an assertion of personal jurisdiction").

Even if these calls or any other communications between Papa's Dodge and the Parts Depot, including bills of lading on deliveries, were sufficient to establish that Papa's Dodge transacted business in Massachusetts, to satisfy personal jurisdiction the claims asserted by Plaintiffs also must have arisen from their transaction of business with the state.  Merced v. JLG Indus., Inc., 170 F. Supp. 2d 65, 71 (stating that "the plaintiff has the burden of demonstrating that his cause of action arises out of defendant's business transactions in Massachusetts") (citing Massachusetts Raleigh Rug Co. v. R.A. Civitello Co., 23 Mass. App. Ct. 1025 (1987)).  Here, on

this record, even if such actions could be considered transactions by Papa's Dodge, Plaintiffs have alleged no connection between such transactions between Papa's Dodge and the Parts Depot and the injury suffered by Brown resulting from lifting cages of car parts on the loading dock while delivering parts to Papa's Dodge.  D. 7 ¶ 17.  A "but for" test applies for determining when an injury "arises" from transacting business in Massachusetts.  Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 65 (D. Mass. 2011) (citing Tatro, 416 Mass. at 770-71).  Plaintiffs have not met their burden to show that, "but for" these alleged transactions, Brown would not have been injured as a result of the faulty loading dock during the delivery of parts to Papa's Dodge.  Based on all of these factors, the Court concludes that section 3(a) does not authorize personal jurisdiction over Defendants.

    **B.**    **Due Process**

Even if Plaintiffs had satisfied their showing under the long-arm statute, they also have not satisfied the due process analysis.  "For jurisdiction to be proper, constitutional requirements of due process must be met."  Shipley Co. v. Clark, 728 F. Supp. 818, 822 (D. Mass 1990).   There are two types of personal jurisdiction to consider in the constitutional analysis:   general and specific.  Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).

    *1.*    *General Jurisdiction*

General jurisdiction applies even when a plaintiff's claims are unrelated to the defendant's forum-state contacts if the defendant's contacts with the forum state have been "so 'continuous and systematic' as to render them essentially at home in the forum State."  Goodyear Dunlop Tires Ops., S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing International Shoe, 326 U.S. at 317).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded

as at home." Centurion Networking Serv. Partners, LLC v. Barker, No. 17-cv-11304-ADB, 2018 WL 1972789, at *2 (D. Mass. Apr. 26, 2018) (quoting Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)). A defendant's actions must be so persistent as to make them analogous to a Massachusetts corporation. See Adams v. New England Scaffolding, Inc., No. 13-cv-12629-FDS, 2016 WL 6514090, at *3 (D. Mass. Oct. 28, 2016) (finding general jurisdiction inapplicable and stating that "[h]aving a longstanding business relationship with a Massachusetts corporation does not make [defendant] analogous to a domestic corporation").

Plaintiffs have not shown that Papa's Dodge should be considered "at home" in Massachusetts. Papa's Dodge is not incorporated in Massachusetts, has no locations in Massachusetts and there are no facts indicating that agents of Papa's Dodge ever traveled to Massachusetts to conduct business. See D. 9 at 2. Rather, Plaintiffs base their assertion that general jurisdiction applies on Papa's Dodge's ordering of parts through the FCA software, the daily deliveries between the Parts Depot in Massachusetts and Papa's Dodge in Connecticut and Papa's Dodge's calls to the Parts Depot to discuss shipping errors. D. 13-1 at 6-7. These actions fall well short of establishing that Papa's Dodge is analogous to a Massachusetts corporation and are insufficient to support an exercise of general jurisdiction.

As discussed in Medici v. Lifespan Corp., 239 F. Supp. 3d 355 (D. Mass. 2017), actions that could be considered "continuous and systematic contacts" are insufficient to exercise general jurisdiction where they fail to establish that defendant is "at home" in the forum state. Medici, 239 F. Supp. at 369. In that case, although a hospital "maintain[ed] two locations in Massachusetts, employ[ed] people in Massachusetts, and serve[ed] some proportion of its patients in Massachusetts," another session of this Court (Burroughs, J.) determined that it lacked general jurisdiction where the hospital was not "essentially at home" in Massachusetts because the hospital

was not incorporated in Massachusetts and its principal place of business was not in Massachusetts. See id.  Similarly, in Mueller Sys., LLC v. Teti, 199 F. Supp. 3d 270 (D. Mass. 2016), another session of this Court (Gorton, J.) refused to exercise general jurisdiction over a Canadian citizen and a Canadian corporation that principally operated its business in Canada.  Mueller Sys., LLC, 199 F. Supp. 3d at 278.  The plaintiff relied on four meetings that the defendants had held with another company in Massachusetts over a four-year period, but the Court determined that these meetings were insufficient to confer general jurisdiction where defendants could not "be deemed 'at home' in Massachusetts based on such contacts."  Id. (noting that "[e]xercising general jurisdiction over an entity that is neither incorporated nor has its principal place of business in the forum is exceptional").  To the extent that Papa's Dodge's actions could be considered "continuous and systematic" business transactions, which, as discussed previously, the Plaintiff has not demonstrated, "[r]egularly engaging in business within a state does not itself make a corporation 'at home' in that state, as required for general jurisdiction."  Adams, 2016 WL 6514090, at *3.

## 2. *Specific Jurisdiction*

Even where general jurisdiction does not apply, contacts sufficient to establish specific jurisdiction may permit the exercise of personal jurisdiction.  See Cossaboon, 600 F.3d at 31. Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts."  Id.  (quoting Pritzker, 42 F.3d at 60).  The specific jurisdiction inquiry is threefold:  relatedness, purposeful availment and reasonableness. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (citing N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)).  The Court must find that all three are present to assert specific personal jurisdiction over a defendant.  See id.  The plaintiff bears the burden of proof on all three

elements.  See Rodriguez v. Samsung Electronics Co., Ltd., 827 F. Supp. 2d 47, 50 (D. Mass. 2011).

a)   Relatedness

In determining relatedness, courts inquire into whether "the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum."  Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).  It is a "flexible, relaxed standard," id., but still requires a causal relationship between Plaintiffs' claim and Defendants' forum-related conduct.  Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) (noting that "this court 'steadfastly rejects the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect'") (quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).  Though not precisely proximate cause, "due process demands something like a 'proximate cause' nexus."  Id. (quoting Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)).  "[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case."  Id. (second alteration in original) (quoting Pleasant St. Corp., 960 F.2d at 1089).

Plaintiffs aver that Brown's injury "arose directly out of the delivery of parts to" Papa's Dodge.  D. 13-1 at 7.  Defendants counter that the injury, which "occurred in Connecticut with a Connecticut-based Defendant" is not related to the delivery of parts from Massachusetts because it relates to the condition of the loading dock, which is unrelated to any contacts with Massachusetts.  D. 9 at 10.  As discussed previously, the only direct contacts that Papa's Dodge had with the Parts Depot were phone calls to Parts Depot employees to troubleshoot defective orders.  Plaintiffs have not alleged any facts indicating that Brown's injury was in any way related

10

to one of these calls.  As such, the relatedness prong required to establish specific jurisdiction has not been met.

b)   <u>Purposeful Availment</u>

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." <u>Weinberg v. Grand Circle Travel, LLC</u>, 891 F. Supp. 2d 228, 246 (D. Mass. 2012) (quoting <u>Sawtelle</u>, 70 F.3d at 1391).  Purposeful availment turns on voluntariness and foreseeability.  <u>C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.</u>, 771 F.3d 59, 66 (1st Cir. 2014).  "Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant <u>himself</u>." <u>Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.</u>, 825 F.3d 28, 36 (1st Cir. 2016) (emphasis in original). "Foreseeability requires that a defendant's contacts with the forum state are 'such that [the defendant] could reasonably anticipate being haled into court there.'" <u>Id.</u> (alteration in original) (quoting <u>Adelson v. Hananel</u>, 510 F.3d 43, 50 (1st Cir. 2007) (internal quotation marks omitted)).

As discussed in the statutory analysis, the facts do not indicate that Papa's Dodge voluntarily initiated contact with Massachusetts.  Rather, Papa's Dodge utilized the FCA software to order parts, which orders were then fulfilled by the Parts Depot.  <u>See</u> D. 13 ¶ 10; D. 13-3.  There is no indication that, in placing their orders, Papa's Dodge had any control over which facility, whether the Parts Depot in Massachusetts or another facility, would fill the orders or that they specifically sought to engage a Massachusetts facility.  Their contacts with Massachusetts through the delivery of parts from the Parts Depot were a fortuitous result of their placing orders through the FCA software system.  The fact that the bills of lading on the deliveries list only the Parts Depot and Papa's Dodge, D. 13-1 at 3, does not change this analysis as the bills of lading reflect that orders made through the FCA software system were fulfilled by the Parts Depot, but do not

11

indicate any voluntary initiation of contact with Massachusetts.  As such, the Court cannot conclude that Papa's Dodge purposefully availed itself of the laws of Massachusetts.  See Brabner v. Chow, No. 13-cv-10324-FDS, 2014 WL 1404702, at *9 (D. Mass. Apr. 9, 2014) (declining to find that purposeful availment was satisfied and stating that "[w]ithout evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship . . . the mere fact that the defendant willingly entered into a tendered relationship does not carry the day") (quoting Phillips Exeter, 196 F.3d at 292).

c)    Reasonableness

In concluding the specific jurisdiction analysis, the Court considers the reasonableness of requiring Papa's Dodge to litigate this action in Massachusetts.  The reasonableness inquiry is based on a balancing of the following "Gestalt factors":  "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67). "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close."  Nowak v. Tak How Invs., 94 F.3d 708, 717.

As to the first factor, "[t]he First Circuit has held that the first factor is 'only meaningful where a party can demonstrate some kind of special or unusual burden.'"  Risktimetry Analytics, LLC v. Altaira, LLC, 752 F. Supp. 2d 141, 147 (D. Mass. 2010) (quoting Pritzker, 42 F.3d at 64) (determining that travel between Utah and Massachusetts was not a special or unusual burden). Papa's Dodge has not indicated that it would suffer any unusual burden as a result of being required to travel to Massachusetts to defend Plaintiffs' claims.  That determination, however, does not end

the analysis as the rest of the Gestalt factors, taken as a whole, do not weigh in favor of jurisdiction in Massachusetts.

Regarding the second factor, Massachusetts does not have a strong interest in adjudicating this case because there is little connection between the forum and the resulting injury that occurred in Connecticut at a business that only has locations in Connecticut.  See Sawtelle, 70 F.3d at 1395 (explaining that, although "a forum state has a demonstrable interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, [the forum state] has a far less compelling interest in the prosecution of a . . . suit stemming from an injury that occurred outside of its borders") (internal citation omitted).  The third factor favors Plaintiffs because they reside in Massachusetts, so it is likely that it would be most convenient to them to litigate there and "courts 'must accord deference to the plaintiff's choice of forum.'"  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 635 (1st Cir. 2001) (quoting Nowak, 94 F.3d at 718).  As to the fourth factor, it is not apparent that the case would most effectively be resolved in Massachusetts, especially considering that the injury occurred as the result of alleged defective conditions at a location outside of Massachusetts.  See Christopher v. Mount Snow, Ltd., No. 95-cv-10352-MLW, 1996 WL 590738, at *8 (D. Mass. Sept. 24, 1996) (concluding that adjudication of a tort claim would be most effective in the state in which the tort occurred).  Fifth, because none of the actions giving rise to Plaintiffs' alleged injuries occurred in Massachusetts or were directed at Massachusetts, this is not an instance where social policy compels adjudication in Massachusetts.  Overall, the balance of these gestalt factors does not support the conclusion that it would be reasonable to subject Papa's Dodge to personal jurisdiction in this forum.

**VI.      Conclusion**

For the foregoing reasons, the Court ALLOWS Papa's Dodge's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), D. 8.[1]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[1] At the motion hearing, the Court noted that Plaintiffs had withdrawn their alternative argument as to transfer of the action.